# Applicability of 18 U.S.C. § 208 to Proposed Appointment of Government Official to the Board of Connie Lee

An executive branch officer or employee appointed to the Board of Directors of Connie Lee would be a "director" within the meaning of 18 U S.C § 208(a) and therefore would be disqualified from participating "personnally and substantially" in any "particular matter" implicating the financial interests of Connie Lee unless the conditions of subsection 208(b) are satisfied.

June 22, 1994

MEMORANDUM OPINION FOR THE ASSISTANT GENERAL COUNSEL
DEPARTMENT OF THE TREASURY

This memorandum is in response to your request of May 23, 1994, for an opinion as to whether the Deputy Assistant Secretary, if appointed to the Board of Directors of the College Construction Loan Insurance Association ("Connie Lee"), would be subject to the requirements imposed by 18 U.S.C. § 208 on "directors" of outside organizations. We have concluded that if appointed, the Deputy Assistant Secretary would be a "director" of an outside organization within the meaning of § 208, and accordingly would have to comply with the provisions of that section in discharging his or her government duties. This conclusion does not preclude the appointment of the Deputy Assistant Secretary or another Treasury official to the board of Connie Lee. Rather, it means that if appointed, the official could not participate in any particular matter in his or her government capacity in which Connie Lee had a financial interest, unless he or she received a waiver issued pursuant to § 208(b).

## Background

Connie Lee was incorporated as a private, for-profit corporation of the District of Columbia in 1987 as directed by Title VII of the Higher Education Amendments of 1986, Pub. L. No. 99-498, sec. 701, § 751, 100 Stat. 1268, 1528 (codified at 20 U.S.C. §§ 1132f-1132f-9).* At that time, many colleges and universities were unable to obtain private financing for capital improvements and routine maintenance of their physical plants. By providing financial insurance and guarantees for qualifying loans, Connie Lee enhances the credit quality of these educational institu-

---

* **Editor's Note**  The statutory provisions concerning Connie Lee that are discussed in this opinion were subsequently repealed in 1996 and replaced by the provisions that are now codified at 20 U.S.C. § 1132f-10 *See* Student Loan Marketing Association Reorganization Act of 1996, Pub. L No. 104-208, § 603, 110 Stat 3009-275, 3009-209 (enactment of current section), 3009-293 (repeal)  The changes to the statute do not affect the analysis or conclusions of this opinion.

tions, facilitating their access to private credit. H.R. Rep. No. 99-383, at 71-73 (1985), *reprinted in* 1986 U.S.C.C.A.N. 2572, 2642-44 ("House Rep."). In form and function, Connie Lee is similar to the Student Loan Marketing Association ("Sallie Mae").

Connie Lee began operating as a joint venture of the Secretary of Education, Sallie Mae and interested members of the higher education community. Congress "intended that the Corporation . . . initially operate under the stewardship of the Student Loan Marketing Association, subject to the direction and control of the Corporation's Board of Directors. . . . [T]he direct interest of the federal government in the Corporation is expected to diminish and eventually terminate." House Rep. at 74, *reprinted in* 1986 U.S.C.C.A.N. at 2645. The statute authorized the Secretary of Education and Sallie Mae to subscribe to voting common stock in a four to one ratio. *See* 20 U.S.C. § 1132f-4(a), (b). Congress gave the board the authority to issue additional shares of voting common stock for sale to the public and institutions of higher education. *Id.* § 1132f-4(d). After five years, the statute authorized the Secretary of Education to sell the stock held by that department, and gave Sallie Mae a right of first refusal in the event of such a sale. *Id.* § 1132f-7(a).

Connie Lee is governed by an eleven member board of directors. At present, two directors are appointed by the Secretary of Education, two by the Secretary of the Treasury, and three by Sallie Mae. The remaining four directors are elected by the holders of the voting common stock. *Id.* § 1132f-3(a). A director serves for a term of one year or until a successor has been appointed and qualified. *Id.* If Sallie Mae acquires enough voting common stock from the Secretary of Education to own more than fifty percent of the outstanding voting shares, the entire board is to be elected by the shareholders. *Id.* § 1132f-7(c).

In the past, the individuals appointed by the Secretary of the Treasury have been private citizens. The Secretary is now considering appointing a Deputy Assistant Secretary to the board of Connie Lee. You are concerned that if appointed, the Deputy Assistant Secretary would no longer be able to participate in the formulation of the Department's policies regarding its interests in Connie Lee.

### *Discussion*

Under § 208, no officer or employee in the executive branch may participate "personally and substantially" in any "particular matter" in which an "organization in which he is serving as officer, director, trustee, general partner or employee . . . has a financial interest" unless he obtains a waiver or satisfies an exception as outlined in subsection 208(b). 18 U.S.C. § 208(a). However, this Office has previously taken the position that "a federal official serving on the board of an essentially private entity by virtue of a federal statutory mandate is not an 'officer, director or trustee' of that entity within the meaning of section 208." Memorandum for David H. Martin, Director, Office of Government Ethics, from Samuel A.

Alito, Jr., Deputy Assistant Attorney General, Office of Legal Counsel, *Re: USIA Director's Service on the Board of the United States Telecommunications Training Institute* at 2 (Dec. 3, 1986) ("USTTI Memo"). You have suggested that the Secretary's appointment of a Deputy Assistant Secretary to the Connie Lee board would establish a position analogous to an "ex officio" director and therefore should not trigger the application of § 208. Unfortunately, we cannot agree.

This Office has found that a government official serves on the board of a private entity in an ex officio rather than personal capacity where that service is expressly authorized by statute.[1] We have also ruled that a government official's service as a director does not violate § 208 where the rules of the private entity designate that official as a member of the board and neither the rules or state law appear to impose a fiduciary duty to the private entity on that director.[2]

The proposed arrangement for Connie Lee would not fall into either of these categories. While the governing statutes do not prohibit the appointment or election of federal officers to the Connie Lee board, no government official is designated as a board member in either a personal or official capacity. *See* 20 U.S.C. §§ 1132f-3, 1132f-7(c). As we stated in the USTTI opinion:

> [S]ection 208 is premised on a concern to avoid any conflict between a federal official's public and private obligations and interests. . . . [W]here a government official is authorized by statute to serve on the board of a private group as part of his or her official governmental duties, in what is essentially an ex officio capacity, the reasonable inference to be drawn is that the official is to serve the interests of the government in the event of any conflict between those interests and the interests of the private organization.

*Id.* at 2. Any fiduciary duty the director owes to the organization in question is clearly subordinate to that director's duties to his or her government office and the United States.

---

[1] Thus this Office has determined that the restrictions of § 208 did not apply where a federal statute explicitly designated the Attorney General as an ex officio member of the Board of Trustees of the National Trust for Historic Preservation, *Questions Raised by the Attorney General's Service as a Trustee of the National Trust for Historic Preservation*, 6 Op. O L C. 443, 446 (1982), or where the Director of the U.S. Information Agency served on the board of a private institute pursuant to a federal statute authorizing several executive agencies to provide official support to that institute "including . . . service on the board of the Institute," USTTI Memo at 2 (quoting the Omnibus Diplomatic Security and Anti-Terrorism Act of 1988, Pub. L No 99-399, § 1307, 100 Stat 853, 899).

[2] Nor did § 208 apply where the constitution of the American Bar Association designated the Attorney General as an ex officio member of the ABA House of Delegates, Memorandum for Thomas E. Kauper, Assistant Attorney General, Antitrust Division, from Mary C Lawton, Deputy Assistant Attorney General, Office of Legal Counsel, *Re. Contemplated ABA Suit* (May 21, 1976), or where every Director of the National Bureau of Standards since 1951 had served on the board of a private standard setting organization and that organization amended its bylaws to designate the Director as a non-voting ex officio member of the board Letter for the Hon. Warren G Magnuson, Chairman, Senate Committee on Commerce, Science and Transportation, from Leon Ulman, Deputy Assistant Attorney General, Office of Legal Counsel at 4-6 (Dec. 13, 1977)

There is no indication that the fiduciary duty of a Connie Lee director appointed by the Secretary is subordinate to any duty to the government. Congress expressly provided that absent a conflict with the provisions of the Higher Education Act, Connie Lee was to be subject to the corporation law of the District of Columbia. 20 U.S.C. § 1132f(c). The language and structure of the statutory provisions governing the board of directors are in no way inconsistent with the proposition that all Connie Lee directors, including those appointed by the Secretary, owe the fiduciary duty dictated by D.C. law to the corporation and its shareholders. While the Secretaries of Education and the Treasury were both granted the power to appoint two directors and to replace these directors by appointing replacements anytime after the end of their one year term because of the "significant interests" of the government in the early years of operation, *see* House Rep. at 73, *reprinted in* 1986 U.S.C.C.A.N. at 2644; 20 U.S.C. § 1132f-3(a), the articles and bylaws of Connie Lee vest limited removal power in the board, not in any of the appointing bodies.[3] If a government official appointed by the Secretary resigned or was removed from that government position, he or she could retain a seat on the Connie Lee board for the duration of the term unless he or she resigned or was removed by the remaining board members.[4] This structure suggests that Congress did not intend for the Secretary to exercise direct control over his appointees once they were appointed.

Connie Lee's status as a private, for-profit corporation with outstanding voting shares held by private individuals and institutions strengthens the conclusion that its directors are bound by a fiduciary duty to the corporation and to these shareholders in their capacity as directors. 20 U.S.C. § 1132f(a),(b); Bylaws, art. III, § 3.8. Furthermore, directors may receive compensation for their service to the corporation "in their capacities as Directors or otherwise." Bylaws, art. III, § 3.8. While you have indicated that a Treasury official appointed to the board would waive any compensation, this provision is additional evidence of the directors' fiduciary duty to the corporation and potentially presents the appearance of a conflict of interest. These obligations and the attendant potential for conflict are precisely the circumstances that § 208 is designed to address.

## Conclusion

An executive officer or employee appointed to the board of Connie Lee by the Secretary would be a "director" within the meaning of 18 U.S.C. § 208(a). Ac-

---

[3] Article VII, clause 4 of the original articles of incorporation, *see* District of Columbia Department of Consumer and Regulatory Affairs, Business Regulation Administration Certificate of Incorporation, College Construction Loan Insurance Association (Feb. 13, 1987), and article III, section 3 6 of the bylaws, *see* Bylaws of the College Construction Loan Insurance Association (Sept. 11, 1991) ("Bylaws"), both specify that "[a]ny Director may be removed for cause by vote of a majority of the remaining Directors."

[4] Thus, even if the Secretary ordered the Deputy Assistant Secretary to vote in a particular way on the Board, the Secretary could not enforce that order by removing him or her from the Board.

cordingly, he or she would be disqualified from participating "personally and substantially" in any "particular matter" implicating the financial interests of Connie Lee unless the conditions of subsection 208(b) were satisfied.

WALTER DELLINGER
*Assistant Attorney General*
*Office of Legal Counsel*